**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MAURICIO RESTREPO, | : | Civil No. 05-130 (JBS) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| THOMAS SULLIVAN, et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

Mauricio Restrepo, Pro Se
#405807/962758B
Southern State Correctional Facility
P.O. Box 150
Delmont, NJ 08314

Jack R. Martin
Assistant Prosecutor
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, NJ 08330
Attorney for Respondents

**SIMANDLE, District Judge**

Petitioner, Mauricio Restrepo, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondents have filed an Answer. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

## BACKGROUND

1.  <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> The case against defendant began when the Atlantic County Prosecutor's Office agreed to use Miguel Gomez as an informant. Gomez was facing a substantial prison sentence on drug-related charges. The State offered Gomez a plea agreement of fifteen years in State prison with five years of parole ineligibility, with the possibility of a lesser sentence in return for his cooperation with the Atlantic County Prosecutor's Office, Narcotics Task Force.
>
> Gomez told members of the Task Force about an individual known only as "Mauricio" who was selling cocaine in the Atlantic City area. Based on this information, investigators arranged for Gomez to purchase a quantity of cocaine from Mauricio. Gomez was wired with an audio recording device and given $375 in cash to purchase one half ounce of cocaine. He was then taken to a nearby location where he was expected to meet Mauricio. After walking a few blocks, Gomez met defendant and negotiated the purchase of a quantity of cocaine for $375.
>
> Defendant gave Gomez a set of keys and instructed him to return them to his mother's store located nearby. After Gomez completed this task, defendant told him that he had placed the cocaine inside a nearby phone booth. Gomez went to this location and retrieved it. He then turned the cocaine over to the police. The entire transaction was observed by the police. The phone booth used by defendant as a drop-off point was located within one thousand feet of a school property.
>
> Thereafter, Gomez was able to arrange three additional purchases of cocaine from defendant. Gomez initiated contact with defendant on each of these three occasions by paging defendant from a police telephone

      line and waiting for defendant to call back.  After the
      details of the purchase were discussed and agreed to on
      the telephone, the parties met at various locations
      around Atlantic City to finalize the sale.  These
      telephone conversations were all recorded by the
      police.  On each occasion, Gomez was electronically
      equipped to record the encounter; was given an amount
      of cash by the police to make the illicit purchase; and
      the actual purchases involved face to face transactions
      between defendant and Gomez monitored by police
      surveillance teams.  The details for those three
      transactions were as follows: December 18, 1996, $350
      for 13.3 grams of cocaine; March 8, 1997, $1,800 for
      57.15 grams of cocaine; December 9, 1997, $1,900 for
      53.09 grams of cocaine.

          At trial, defendant called four family members as
      character witnesses.  The State relied upon the
      testimony of the police officers, Gomez, and the
      various audio recordings.  Defendant elected not to
      testify.

(Respondents' Appendix ("Ra") 86-87; State v. Restrepo, A-1884-

00T5 (May 21, 2003), pp. 3-4).

2.    Procedural History

     On October 10, 1998, an Atlantic County Grand Jury indicted

Petitioner on fourteen counts, including: distribution of a

controlled dangerous substance on school property, distribution

of a controlled dangerous substance, possession of a controlled

dangerous substance with intent to distribute, and possession of

a controlled dangerous substance.

     From March 20 through March 23, 2000, Petitioner was tried

by jury in Superior Court of New Jersey, Law Division, Atlantic

County ("Law Division").  The jury found the petitioner guilty on

all counts.

On April 14, 2000, Petitioner's motion for a new trial was denied, and Petitioner was sentenced to an aggregate sentence of nine years imprisonment with six years parole ineligibility.  On June 16, 2000, Petitioner's motion for reconsideration of his sentence was denied.

Petitioner appealed his conviction and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  The Appellate Division affirmed the conviction and sentence on May 21, 2003.  Petitioner then petitioned the New Jersey Supreme Court for certification, which was denied on June 4, 2004.

The instant petition was filed on January 28, 2005.  On February 8, 2005, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On July 12, 2005, Petitioner filed a motion for counsel.  On October 20, 2005, Respondents filed an Answer to the Petition and the state court record.

## DISCUSSION

**A.    Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1.  Petitioner was denied due process because of an egregious comment of the Assistant Prosecutor in summation.
2.  Petitioner's constitutional rights were violated when the trial court permitted the Assistant Prosecutor the freedom to openly communicate with a juror.

4

>        3.    Petitioner was denied his constitutional rights by
>              imposition of consecutive sentences.

<u>See</u> Petition for Writ of Habeas Corpus, ¶ 10.  Petitioner has raised the instant claims before the New Jersey state courts in his direct appeal.  To the extent that Petitioner has not raised the claims before the state courts, this Court finds that the claims are meritless, and will excuse the exhaustion requirement. <u>See</u> 28 U.S.C. § 2254(b)(1), (2).

**B.    <u>Standards Governing Petitioner's Claims</u>.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert. denied</u> 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(citing <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id.</u>  A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state

6

court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-

supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

C.      **Prosecutorial Misconduct.**

Petitioner argues that the Prosecutor violated his constitutional rights during summation. He objects to the following comment made by the prosecutor:

> He's got customers out there. He's in it for the money. He's making money and there's no evidence at all that's been presented to controvert the fact that's Mauricio on those tapes-

(Transcript, March 23, 2000, at pp. 46-47). At that point, defense counsel made an objection and a side-bar conference was held. Defense counsel asked for a mistrial, stating that the prosecutor's statement was an unfair comment on Petitioner's decision not to testify. The trial judge admonished the prosecutor, but did not grant the mistrial, stating that it was not necessarily a suggestion that Petitioner could have or should have testified, and that it was not a violation of Petitioner's right to remain silent. (Transcript, March 23, 2000, at pp. 47-49).

During his charge to the jury, the trial judge stated:

> Now, in this case the defendant chose not to testify. A defendant in a criminal trial has a constitutional right not to testify. And the fact that the defendant exercised his right not to testify should not be considered by you in anyway at all in your deliberations. Now, as I said, the defendant has no obligation to prove his innocence or to offer any proof relating to his innocence, but the State has the burden of proving the defendant guilty beyond a reasonable doubt.

(Transcript, March 23, 2000, at p. 64).

9

Petitioner also argues that his constitutional rights were violated when the prosecutor apparently spoke to a member of the jury during discussion regarding a jury question.  Defense counsel raised the issue at a side-bar, stating:

> [Defense counsel:] I have an objection here.  Another motion for a mistrial.  The prosecutor was standing next to the jury box, he got drawn into a conversation basically with a juror who was talking to him and he was saying, okay or something like that, and I understand –
> [Prosecutor:] I said on the record, I said, Do you want more?  That's all I said, Judge.

(Transcript, March 23, 2000, at p. 105).  The trial judge warned the prosecutor not to talk to the jury.

Petitioner raised these arguments on direct appeal.  The Appellate Division held:

> Prosecutorial misconduct warrants reversal when it is so egregious that it operates to deprive a defendant of a fair trial. ...
>
> Here, we do not consider the two instances cited by defendant to amount to prosecutorial misconduct.  We glean, from the context in which the remarks were made, that they were not intended to improperly sway the jury.  They were, in the light most favorable to defendant, inadvertent, innocuous remarks, which were immediately and sternly addressed by the trial court.

(Ra 91 (internal citations omitted)).

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  "The touchstone of due process analysis in cases of

alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial. See id. at 220. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." United States v. Young, 470 U.S. 1, 11 (1985).

However, the United States Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

Thus, where a prosecutor's conduct during trial is challenged in habeas, "[t]he relevant question is whether the prosecutor's [conduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, supra). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the

11

entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In this case, the Court finds that the fairness of Petitioner's trial was not compromised by the comments of the prosecutor, either in summation or to the juror.  A review of the record reveals that the State presented overwhelming evidence of Petitioner's guilt, including the testimony of Gomez, the police officers, and the audio recordings to support Gomez's and the officers' versions of the events.  The challenged comments by the Prosecutor did not amount to misconduct to deny Petitioner a fair trial.  Nor were the Prosecutor's actions sufficient to demonstrate a constitutional violation warranting habeas relief.[1]

Further, the state court determinations have not "resulted in a decision that was contrary to, or involved an unreasonable

---

[1] To the extent that Petitioner couches these arguments as trial court errors, they remain meritless. It has been held that federal courts must afford the states deference in their determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).  This Court finds no constitutional violations with regard to the decisions of the trial court regarding the evidence and procedure of Petitioner's trial.

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, these grounds for a writ of habeas corpus will be denied.

**D.     Excessive Sentence.**

Petitioner argues that his sentence was excessive in that he should not have been sentenced to consecutive sentences for certain counts.

The Appellate Division reviewed Petitioner's sentencing claim and found that it "was well within [the sentencing court's] discretion and supported by the relevant provisions of the [New Jersey Sentencing] Code."  (Ra91).

To begin, a federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O' Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28

U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Here, New Jersey courts reviewed Petitioner's sentence and found no error; however, any sentencing error that may have occurred is a matter of state law and does not rise to a level of disproportionality that could violate the Eighth Amendment. As the sentencing issue raised by Petitioner is a matter of state law, and because the Court finds no constitutional violation, this claim must be denied.

## **CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253. Petitioner's motion for counsel is dismissed as moot.

An appropriate Order accompanies this Opinion.


  **s/ Jerome B. Simandle**
       JEROME B. SIMANDLE
    United States District Judge


Dated:    **March 17, 2006**